**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James L. PRICE, Defendant-Appellant.**

No. 85–2378.

United States Court of Appeals,
Tenth Circuit.

June 25, 1986.

---

Peter Schoenburg, Asst. Federal Public Defender, Albuquerque, N.M., for defendant-appellant.

Presiliano Torrez, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., and Richard J. Smith, Asst. U.S. Atty., on brief), D.N.M., Albuquerque, N.M., for plaintiff-appellee.

Before McKAY, LOGAN and MOORE, Circuit Judges.

McKAY, Circuit Judge.

James L. Price appeals his conviction of uttering a forged United States Treasury check in violation of 18 U.S.C. § 495 (1982). He argues that the evidence is insufficient to sustain his conviction and that he was denied effective assistance of counsel.

Before examining the evidence presented, we find it necessary to reiterate the correct standard for evaluating the sufficiency of the evidence, because litigants such as Mr. Price continue to appear before us and cite an incorrect standard. In his brief, Mr. Price states:

> [T]o uphold a conviction challenged for insufficiency of the evidence, the appellate court must find that a trier of fact could rationally have excluded every reasonable hypothesis of innocence. *U.S. v. Davilla,* 693 F.2d 1006, 1007 (10th Cir. 1982). *See also U.S. v. Ackal,* 706 F.2d 523, 529 (5th Cir.1983). "The evidence must be substantial; it must do more than raise a mere suspicion of guilt. If the evidence is consistent with both innocence and guilt it cannot support a conviction." *U.S. v. Varoz,* 740 F.2d 772, 775 (10th Cir.1984).

Appellant's Brief-in-Chief at 12.

In *United States v. Hooks,* 780 F.2d 1526, 1530–31 (10th Cir.1986), we sought to clarify the correct standard. There we expressly rejected the standards enunciated by Mr. Price and emphasized that there is but a single test that applies in reviewing the sufficiency of the evidence in criminal cases. We also noted that our opinions unfortunately have stated that a conviction cannot be based upon evidence which is consistent with both innocence and guilt.* Referring to this incorrect standard, we have explained:

> The use of this language is unfortunate for it suggests that a criminal conviction cannot be sustained if a reasonable hypothesis could be designed which is consistent with innocence. Indeed, if there was any validity to this proposition after *Corbin [v. United States,* 253 F.2d 646 (10th Cir.1958)], it was flatly rejected by the Supreme Court in *Jackson v. Virginia,* 443 U.S. 307 [99 S.Ct. 2781, 61 L.Ed.2d 560] ... (1979). There, in explaining the standard for weighing the constitutional sufficiency of the evidence, the Court stated:
>
> > Only under a theory that the prosecution was under an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt could this petitioner's challenge be sustained. That theory the court has rejected in the past. *Holland v. United States,* 348 U.S. 121, 140 [75 S.Ct. 127, 137, 99 L.Ed. 150].... We decline to adopt it today.
>
> 443 U.S. at 326 [99 S.Ct. at 2792]....

780 F.2d at 1530. Finally, we stated in *Hooks:*

> In the event that our formulation of the standard for reviewing criminal convictions has resulted in ... mischief, we take this opportunity to make clear that, regardless of the kind of evidence, direct or circumstantial, there is a single test that applies in reviewing the sufficiency of the evidence in criminal cases. [footnote omitted] The evidence—both direct and circumstantial, together with the reasonable inferences to be drawn there-

---

* Though unfortunate, this language can be interpreted in a manner consistent with the correct standard of review. If, after applying the appropriate standard of review, the court determines that a reasonable jury would have concluded that the evidence was *equally* consistent with both innocence and guilt, *a fortiori* the jury would have entertained a reasonable doubt, and the conviction cannot be sustained. *See Lewis v. United States,* 420 F.2d 1089, 1090–91 (10th Cir.1970); *Cosby v. Jones,* 682 F.2d 1373, 1383 (11th Cir.1982).

from—is sufficient if, when taken in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt. 780 F.2d at 1531.

Mr. Price argues that we should not view the record as a whole in assessing the sufficiency of the evidence, rather that we should consider only the evidence submitted at the time the government closed its case-in-chief—when Mr. Price moved for acquittal. Apparently, Mr. Price prefers that we view only the government's case-in-chief because evidence of his previous felony convictions was introduced later in trial, Record, vol. 2, at 73–76, and because the court relied on his own testimony in finding him guilty. *See* Record, vol. 2, at 79–81.

In order to consider only the government's case-in-chief, Mr. Price suggests that we should reject our previously adopted waiver rule. This rule provides that, if a defendant moves for a judgment of acquittal at the close of the government's case pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure, he is deemed to have waived any objection to its denial if he subsequently presents evidence on his behalf. *United States v. Greene,* 442 F.2d 1285, 1286–87 n. 3 (10th Cir.1971). In *United States v. Lopez,* 576 F.2d 840 (10th Cir.1978), we criticized the rule:

> The waiver rule thus places the defendant on the horns of a dilemma if he believes his motion for acquittal made at the close of the government's case was erroneously denied. He can rest his case, thereby preserving his appeal, and face the risk of a conviction which may not be reversed, or he can present evidence of his innocence, thereby waiving his appeal from the original ruling, and assume the risk that this evidence may provide the missing elements in the prosecution's case.

*Id.* at 842. Though we recognize that the waiver rule has been subject to growing criticism and attack, we do not here resolve the severe difficulties presented by the rule. It is unnecessary to do so, because we need not rely on the waiver rule to affirm the denial of Mr. Price's motion to dismiss; the government presented sufficient evidence during its case-in-chief to sustain Mr. Price's conviction. *See United States v. Alfonso,* 738 F.2d 369, 372 (10th Cir.1984).

With the proper standard in mind, we turn to the evidence presented by the government at trial. To sustain a conviction for violation of 18 U.S.C. § 495 (1982), the government must prove that Mr. Price circulated a check knowing that it was forged and intending to defraud the United States. An intent to defraud the United States may be shown by an act which the actor knows will interfere with the government's regular payment of funds to a lawful recipient. *Tacoronte v. United States,* 323 F.2d 772, 774 (10th Cir.1963). We may infer intent and knowledge from the surrounding circumstances. *United States v. White,* 611 F.2d 531, 538–39 & n. 8 (5th Cir.), *cert. denied,* 446 U.S. 992, 100 S.Ct. 2978, 64 L.Ed.2d 849 (1980).

The evidence at trial establishes that Mr. Price, who is illiterate, brought a tax refund check with a forged endorsement to Keith Perkins. He told Mr. Perkins that the payee, Jonathan Moore, was Mr. Price's cousin who was stranded in Texas and needed cash. The endorsement "JONATHAN A. MOORE" was printed on the check in block letters. Mr. Perkins was then unable to cash the check but told Mr. Price that, if he could not find anyone else to cash the check, he should return the next day. When Mr. Price returned the next morning, Mr. Perkins endorsed the check, cashed it at a bank, and gave him the money.

Several months later, Jonathan Moore approached Mr. Perkins, claiming that he was the rightful owner of the check Mr. Perkins had cashed for Mr. Price. When Mr. Moore and Mr. Perkins confronted him about the check, Mr. Price stated that he had cashed it for his cousin. Despite this assertion, Mr. Price did not claim that his cousin was the named payee, nor did he express any intention of getting the money back from his cousin. He did, however, tell

Mr. Moore that he would repay him out of funds he soon expected from a different source. Mr. Price failed to make the repayment until one month before his trial.

When questioned by a police detective, Mr. Price changed his story. He acknowledged that he had told Mr. Perkins his "cousin" story, but confessed that he had received the check from a different person whom he refused to name.

Considering all reasonable inferences that can be drawn from this evidence, we conclude that the evidence amply supports Mr. Price's conviction of uttering the forged check with the intent to defraud the United States, knowing it to be forged.

In addition, Mr. Price contends that he was denied the effective assistance of counsel because the trial court rendered its verdict before defense counsel gave his closing argument. At trial, after Mr. Price presented his defense, the court ordered a brief recess. When the court reconvened, the judge began to announce that he had found Mr. Price guilty. At this point, the following exchange took place:

MR. FINLEY [Defense Counsel]: Excuse me, your Honor—

THE COURT: Yes, sir.

MR. FINLEY: —would you hear closing argument by the defense before deciding finally your ruling in this case? We expected to be able to give closing argument.

THE COURT: Oh, all right. Well, fine. I just assumed that you were going to repeat the argument that you made at the end of the Government's case. All right, surely, Mr. Finley. I'll hear Mr.—

MR. SMITH [Prosecutor]: Your Honor, we're prepared to waive our closing argument.

THE COURT: All right, sir. All right, Mr. Finley.

Record, vol. 2, at 81.

We accept the view that a trial judge, under these circumstances, is capable of keeping an open mind. There is neither an explicit statement nor an implicit suggestion that Mr. Price's closing argument did not receive open-minded consideration. The record demonstrates that the trial court acted inadvertently and did not manifest an unwillingness to hear Mr. Price's closing argument. We conclude, therefore, that defense counsel was permitted to make his closing argument to an attentive, open-minded trier of fact. Moreover, the record indicates that defense counsel raised nothing new of substance in his closing argument. Thus, Mr. Price was not denied effective assistance of counsel.

AFFIRMED.