UNITED STATES of America,
Plaintiff–Appellee,

v.

Edmond Leon LEOPARD, aka "Red"
Leopard, Defendant–Appellant.

No. 90–7079.

United States Court of Appeals,
Tenth Circuit.

June 26, 1991.

John Raley, U.S. Atty., Paul G. Hess, Asst. U.S. Atty., Muskogee, Okl., for plaintiff-appellee.

Before ANDERSON, TACHA, and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

Defendant Edmond Leon Leopard appeals his conviction and resulting sentence following a jury trial in which he was found to have: 1) knowingly and intentionally attempted to manufacture methamphetamine, a schedule II controlled substance; 2) knowingly and intentionally possessed a listed chemical, knowing or having reasonable cause to believe that the listed chemical would be used to manufacture a schedule II controlled substance; 3) knowingly and intentionally possessed with the intent to distribute methamphetamine; 4) knowingly used and carried a firearm during and in relation to a drug trafficking crime or crimes for which he may be prosecuted in a court of the United States; and 5) knowingly possessed a firearm which had been shipped or transported in interstate commerce, affecting commerce thereby, after having been convicted of a crime punishable by imprisonment for a term exceeding one year.

The district court denied Mr. Leopard's motion to suppress evidence seized pursuant to a search of his pickup and refused to instruct the jury on the lesser included offense of possession of a controlled substance. The jury returned a verdict of guilty on all five counts charged. The presentence report provided for a base offense level of 36 which was based on testimony that 41.7 pounds of methamphetamine could have been produced by Mr. Leopard with the chemicals and equipment involved. The district court, after conducting a presentence hearing, followed the presentence report and sentenced Mr. Leopard to a term of 327 months as to each of counts I and III and 120 months as to each of counts II and V, all terms to be served concurrently. As to count IV, Mr. Leopard was sentenced to sixty months in prison. The sentence for count IV is to be served

Ike Allen Laws, Jr., of Laws & Murdoch, P.A., Russellville, Ariz., for defendant-appellant.

consecutively to the sentences in the remaining counts.

Before this court, Mr. Leopard argues that: 1) there was insufficient evidence to convict him of attempting to manufacture a controlled substance in violation of 21 U.S.C. § 846 (1988); 2) the court erred in determining that he had sufficient chemicals on hand to manufacture 41.7 pounds of methamphetamine and thus inaccurately calculated his sentence under the federal sentencing guidelines; 3) a pistol and an amount of methamphetamine found in his pickup during a warrantless search should have been suppressed; and 4) the jury should have been instructed on the lesser included offense of possession of a controlled substance. We review these issues in order and affirm the district court.[1]

*Sufficiency of the Evidence of Attempt to Manufacture*

■ Our standard of review on this claim is to determine whether, after reviewing the record as a whole, " '[t]he evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—is sufficient if, when taken in the light most favorable to the government, a reasonable [trier of fact] could find the defendant guilty beyond a reasonable doubt.' " *United States v. Cox,* 929 F.2d 1511, 1514 (10th Cir.1991) (quoting *United States v. Bowie,* 892 F.2d 1494, 1497 (10th Cir.1990)).[2]

■ In order to convict Mr. Leopard of attempting to manufacture methamphetamine, the government was required to prove: 1) the required criminal intent and 2) "an act or omission constituting a 'substantial step' toward commission of the substantive offense." *United States v. Sullivan,* 919 F.2d 1403, 1429 (10th Cir.

1990). Mr. Leopard argues that the evidence presented at trial did not show the required "substantial step" sufficient to constitute an attempt, and that the government offered no proof that he intended to manufacture an illegal substance.

The unrebutted evidence adduced at trial established that Mr. Leopard, after preliminary discussion and planning, agreed to meet a DEA undercover agent for the purpose of purchasing chemicals and equipment necessary to the manufacture of methamphetamine. As part of their undercover operation, DEA agents loaded a U–Haul truck with the chemicals and equipment discussed by the parties and necessary to the manufacture of methamphetamine and arranged to meet Mr. Leopard to facilitate the exchange. Witnesses testified that Mr. Leopard drove into the Walmart parking lot in Broken Bow, Oklahoma, parked a couple of spaces away from the U–Haul truck in which the agent was waiting for him, entered the passenger side of the truck and spoke briefly with the agent. The agent and another witness testified that Mr. Leopard's person exuded a distinctive odor associated with the manufacture of methamphetamine.

When the agent exited the U–Haul and went around the back to open the back doors, Mr. Leopard accompanied him and, when asked by the agent whether the articles in the truck "would work," Mr. Leopard indicated that they would. Rec. Vol. III at 36. After giving the agent $5500, one-half of the agreed on price of $11,000, Mr. Leopard took the keys to the U–Haul and the key to the padlock on the back of the U–Haul doors and began to drive out of the parking lot. He was stopped when another DEA agent activated a "kill

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R. App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

2. Mr. Leopard did not move for a directed verdict of acquittal on this count or object at the close of the Government's case based on the insufficiency of the evidence. In reviewing suf-

ficiency of the evidence claims, plain error language is sometimes used when a defendant has not moved for a directed verdict of acquittal at the close of all the evidence. *United States v. Cox,* 929 F.2d 1511, 1514 (10th Cir.1991) (citations omitted). Nevertheless, "the standard actually applied is 'essentially the same as if there had been a timely motion for acquittal' ". *Id.* (quoting *United States v. Bowie,* 892 F.2d 1494, 1497 (10th Cir.1990)); *Corbin v. United States,* 253 F.2d 646, 648 (10th Cir.1958).

switch" disabling the vehicle. Mr. Leopard was arrested and a subsequent search of his pockets yielded a small amount of methamphetamine and a loaded .22 magnum pistol.

The testimony at trial was somewhat in conflict as to whether there were enough chemicals and equipment in the U–Haul to manufacture either methamphetamine powder or methamphetamine oil. *Compare* Testimony of William J. Bryant, Rec. Vol. III at 65–66, and William Kent Glanville, *id.* at 91, 96, *with* further testimony of William Kent Glanville at 98–99. In summary, however, the only additional ingredients identified as necessary for the production of saleable methamphetamine were heat, aluminum foil, and distillation equipment, *id.* at 98, 102, items that are relatively generic and easily available when compared to the extensive array of sophisticated chemicals and equipment present in the U–Haul.

Mr. Leopard argues that because the seizure here was not of a "working lab" and because there was evidence that not all of the chemicals and equipment necessary to produce a finished product were present in the U–Haul, he cannot be said to have taken a "substantial step" toward manufacture. We disagree. In *United States v. Johnson,* 767 F.2d 673 (10th Cir.1985), this court affirmed the defendant's conviction for attempted possession with intent to manufacture and distribute a controlled substance even though no "working lab" had yet been set up and the defendant had, in fact, been shipped a noncontrolled substance by his supplier who was cooperating with the DEA. *Id.* at 675–76. Citing *United States v. Bunney,* 705 F.2d 378 (10th Cir.1983), the court in *Johnson* found that the evidence was sufficient to sustain a conviction for attempt because there were not only detailed discussions concerning the purchase of a controlled substance "but also a firm agreement to buy sealed by a cash payment." *Johnson,* 767 F.2d at 675–76.

We hold that the evidence of Mr. Leopard's conduct, particularly when accompanied by his payment of $5500 for the chemicals and equipment, constituted a substantial step toward the commission of the underlying offense. *See id.* at 675 (defendant's request that the chemical he tried to purchase be mislabeled, his use of an alias, his willingness to pay an inflated price for the chemical, and his partial payment all displayed acts sufficient for conviction of attempted possession with intent to manufacture a controlled substance); *cf. United States v. Joyce,* 693 F.2d 838, 841–42 (8th Cir.1982) (defendant's refusal to produce any money in payment negated the finding of a substantial step).

Mr. Leopard further argues that the government failed to present any direct evidence of his intent with regard to the items in the U–Haul. Intent and knowledge, however, can be inferred from surrounding circumstances, *Cox,* 929 F.2d at 1514 (citing *United States v. Price,* 795 F.2d 61, 63 (10th Cir.1986)), and " 'is rarely capable of direct proof.' " *Johnson,* 767 F.2d at 676 (quoting *United States v. Reeves,* 730 F.2d 1189, 1195 (8th Cir.1984)). Viewed in the light most favorable to the government, we hold that the above described evidence, both direct and circumstantial, in addition to demonstrating a substantial step toward the manufacture of methamphetamine, is also sufficient for a reasonable jury to infer that Mr. Leopard intended to attempt the manufacture of methamphetamine and for the jury to find that fact beyond a reasonable doubt.

*Calculation of Sentence for Count I*

Mr. Leopard contends that the court, under the sentencing guidelines, erred in calculating his sentence for attempting to manufacture methamphetamine because it erroneously determined that he had sufficient chemicals and equipment to manufacture 41.7 pounds of methamphetamine. 18 U.S.C. § 3742 (1988) guides our review of sentences imposed under the sentencing guidelines and directs us to determine whether the sentence "(1) was imposed in violation of law; (2) was imposed as a result of an incorrect application of the sentencing guidelines; (3) is outside the applicable guideline range ...; or (4) was imposed for an offense for which

there is no applicable sentencing guideline and is plainly unreasonable." *United States v. Havens*, 910 F.2d 703, 704 (10th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 687, 112 L.Ed.2d 678 (1991) (citing 18 U.S.C. § 3742(e) (1988)). We will affirm factual determinations made by the district court unless they are clearly erroneous, *id.* at 704, and, while we give due deference to the application of the guidelines to the facts, we will fully review the application of those guidelines for legal error. *Id.*

Initially, Mr. Leopard again argues that, because other ingredients were necessary before a finished product could be produced, it was improper for the district court to calculate a produceable amount at all for purposes of sentencing. This issue is controlled by *Havens*, which holds that, even in the absence of some component parts, the trial court may properly estimate the ultimate quantity of produceable drugs. *Havens*, 910 F.2d at 705.

Mr. Leopard's argument that the sentencing guidelines limit the court's ability to estimate produceable quantities to solely those instances where a "laboratory" is seized is also without merit. Application Note 2 to U.S.S.G. § 2D1.4 provides:

> Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the sentencing judge shall approximate the quantity of the controlled substance. In making this determination, the judge may consider, for example, the price generally obtained for the controlled substance, financial or other records, similar transactions in controlled substances by the defendant, and the size or capability of any laboratory involved.

The factors listed in Note 2 are not exclusive; their consideration is permissive. There is thus no requirement limiting the judge's authority in this area to *only* those situations involving a working lab. *See Havens*, 910 F.2d at 704–05 (produceable product estimated based on chemicals seized from a storage locker).

*Admission of Evidence Obtained in Search of Mr. Leopard's Pickup*

■ As his third point of error, Mr. Leopard argues that the district court erred in denying his motion to suppress the second weapon and the additional supply of methamphetamine seized from his pickup. "When we review a denial of a motion to suppress, we accept the trial court's findings of fact unless clearly erroneous. The ultimate determination of reasonableness under the fourth amendment is, however, a conclusion of law that we review de novo." *United States v. McKinnell*, 888 F.2d 669, 672 (10th Cir.1989) (citations omitted), *rev'd on other grounds*, 931 F.2d 64 (10th Cir. 1991).

After Mr. Leopard was arrested, the DEA agents seized his pickup, as a vehicle used to facilitate a drug crime pursuant to 21 U.S.C. § 881(a)(4). Rec. Vol. III at 13. Pursuant to agency policy, agents are required to search seized vehicles to protect the agency from claims of theft or other loss of property. *Id.* at 17. The search of Mr. Leopard's pickup revealed a .45 caliber pistol and a package of methamphetamine. Rec. Vol. III at 13.

Generally, a valid warrant is required before a search may be legally carried out. *McKinnell*, 888 F.2d at 672. A warrantless inventory search, however, is justified after the forfeiture of a vehicle pursuant to 21 U.S.C. § 881(a)(4). *United States v. Walker*, 900 F.2d 1201, 1205 (8th Cir.1990); *United States v. Johnson*, 572 F.2d 227, 234 (9th Cir.), *cert. denied*, 437 U.S. 907, 98 S.Ct. 3097, 57 L.Ed.2d 1137 (1978); *O'Reilly v. United States*, 486 F.2d 208, 210–11 (8th Cir.), *cert. denied*, 414 U.S. 1043, 94 S.Ct. 546, 38 L.Ed.2d 334 (1973). There was substantial evidence that the pickup was properly seized pursuant to 21 U.S.C. § 881, Rec.Vol. II at 15–16; Rec.Vol. III at 13, and that the later search of the pickup was an inventory search done pursuant to agency policy. *Id.* at 17. Mr. Leopard's argument regarding an illegal search, therefore, is unavailing.

*Availability of Lesser Included Offense Instruction*

■ Mr. Leopard finally argues that he was entitled to a lesser included offense instruction on the theory of possession of a

controlled substance. If the evidence is such that a rational jury could convict a defendant of a lesser offense while acquitting him of a greater offense, the defendant is entitled to a lesser included offense instruction. *United States v. Swingler*, 758 F.2d 477, 498 (10th Cir.1985) (citing *Beck v. Alabama*, 447 U.S. 625, 635, 100 S.Ct. 2382, 2388, 65 L.Ed.2d 392 (1980)). In order to receive a lesser included offense instruction, the following conditions must be present: "(1) a proper request; (2) the lesser-included-offense must consist of some, but not all, of the elements of the offense charged; (3) the element differentiating the two offenses must be a matter in dispute; and (4) a jury must be able to rationally convict the defendant of the lesser offense and acquit of the greater offense." *United States v. Joe*, 831 F.2d 218, 219 (10th Cir.1987), (quoting *Fitzgerald v. United States*, 719 F.2d 1069 (10th Cir.1983)), *cert. denied*, 484 U.S. 1072, 108 S.Ct. 1043, 98 L.Ed.2d 1006 (1988).

Mr. Leopard argues that the evidence at trial was equally consistent with possession of methamphetamine as it was with intent to distribute because the quantities he possessed were in user amounts. In making this argument, Mr. Leopard misstates the record. Contrary to Mr. Leopard's characterization, the testimony of the government's chemist was not that the baggies of methamphetamine seized from Mr. Leopard's truck were in "user proportions," *see* Brief of Appellant at 29, but rather that they were "middle or lower level distributor quantities." Rec.Vol. III at 95. There was no dispute, therefore, that the amount of methamphetamine found in Mr. Leopard's truck was a distributor quantity. Because the element differentiating the two offenses, *i.e.*, the quantity of drugs in Mr. Leopard's possession, was not in dispute, and because a jury could not rationally acquit Mr. Leopard of the charge of intent to distribute when there was no dispute that he possessed a distributor-type quantity of methamphetamine, a lesser included offense instruction of simple possession

was unwarranted. *See Swingler*, 758 F.2d at 498.

The judgment of the United States District Court for the Eastern District of Oklahoma is AFFIRMED.